UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**KENNETH CHAUVIN**                                       CIVIL ACTION

**VERSUS**                                                No. 08-1593

**INGRAM BARGE COMPANY, et al.**                          Section I/3

ORDER AND REASONS

Before the court is a motion to remand filed on behalf of plaintiff, Kenneth Chauvin. Defendants in this matter are Ingram Barge Company, Ingram Towing Corporation[1] ("Ingram defendants"), and Ashton Marine, Inc. ("Ashton Marine"). For the following reasons, plaintiff's motion to remand is **GRANTED.**

BACKGROUND

On March 17, 2008, Chauvin filed a lawsuit against Ingram Barge, Ingram Towing and Ashton Marine in the 25th Judicial District Court for the Parish of Plaquemines. Chauvin's petition alleges that he broke his ankle and sustained other injuries on April 13, 2005 during his employment as a boat operator and machinist for Ashton Marine.[2] According to plaintiff, he was assigned to assess possible repairs needed on the M/V LOCKMASTER, a vessel owned by Ingram.[3] Plaintiff alleges that after steering

---

[1]Chauvin's petition alleges Ingram Towing Company was the predecessor company with which Ingram Barge Company may have merged. Rec. Doc. No. 1-2.

[2]Rec. Doc. No. 1-2, p. 2, para. IV.

[3] *Id.* at para. III.

1

the M/V MISS SHIRLEY next to the LOCKMASTER in the Harvey Canal and tying it to a platform barge owned and/or operated by Ashton Marine, a person aboard the LOCKMASTER pulled a line, causing plaintiff to jump to an area on the deck that was both uneven and held equipment.[4] Plaintiff asserts that the sole and proximate cause of his injuries was the negligence of defendants and their servants and/or agents.[5] Plaintiff further alleges that he was a crew member working aboard the M/V MISS SHIRLEY and, therefore, defendants are liable for his injuries under the Jones Act, 46 U.S.C. 688, and the General Maritime Law of the United States of America or, alternatively, under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. 901.[6]

The Ingram defendants removed Chauvin's lawsuit to federal court, citing diversity jurisdiction pursuant to 28 U.S.C. § 1332.[7] Defendants argue that plaintiff is not a seaman and that plaintiff is not entitled to assert a Jones Act claim. According to defendants, plaintiff is limited to the exclusive remedies provided by the LHWCA.[8] Defendants further allege that plaintiff is

---

[4] *Id.* at para. IV.

[5] *Id.* at para. V.

[6] Plaintiff also asserts a cause of action under Louisiana Civil Code article 2315. *Id.* at para. II.

[7] Defendant Ashton Marine consented to the removal. Rec. Doc. No. 1, p. 2, para. 5.

[8] Rec. Doc. No. 1, p. 2, para. 6.

2

precluded from maintaining an action against Ashton Marine under the LHWCA, and that he improperly joined Ashton Marine to defeat diversity jurisdiction.[9]

On May 9, 2008, Chauvin filed this motion arguing that the above-captioned matter should be remanded because he qualifies as a seaman under the Jones Act and cases brought pursuant to the Jones Act are not removable.[10]

## LAW AND ANALYSIS

### I.   STANDARDS OF LAW

#### A.   MOTION TO REMAND

A district court must remand a case to state court if, at any time before final judgment, it appears that the court lacks subject matter jurisdiction.  28 U.S.C. § 1447(c).  The removal statute is strictly construed.  *Sea Robin Pipeline Co. v. New Medico Head Clinic Facility*, No. 94-1450, 1995 U.S. Dist. LEXIS 12013, at *2 (E.D. La. Aug. 14, 1995) (Clement, J.) (quoting *York v. Horizon Fed. Sav. & Loan Ass'n*, 712 F. Supp. 85, 87 (E.D. La. 1989) (Feldman, J.)).  When challenged by a plaintiff seeking remand, the defendant attempting to establish removal bears the burden of

---

[9] *Id.* In the removal notice, defendants allege that plaintiff is a resident of Louisiana, that Ingram Barge Company is a corporation formed under the laws of Tennessee and "principally located" in Nashville, Tennessee, that Ingram Towing Corporation was incorporated under Delaware law and is "principally located" in Nashville, Tennessee, and that Ashton Marine is incorporated in Louisiana and "principally located" in Harvey, Louisiana. Rec. Doc. No. 1, pp. 2-3.

[10] Rec. Doc. No. 4.

proof. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S. Ct. 35, 37, 66 L. Ed. 144 (1921); *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res.*, 99 F.3d 746, 751 (5th Cir. 1996) ("A party invoking the removal jurisdiction of the federal courts bears a heavy burden."). Doubts concerning removal are to be construed against removal and in favor of remand to state court. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citation omitted).

**B. The Jones Act**

**1. Fraudulent Pleading**

Chauvin contends that because he filed his lawsuit in state court under the Jones Act, the matter is not removable. The United States Court of Appeals for the Fifth Circuit has held that as a general rule Jones Act cases are not removable. *Holmes v. Atlantic Sounding Co.*, 437 F.3d 441 445 (5th Cir. 2006)(citing *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175 (5th Cir. 1995)).[11] However, there is no bar to removal when a Jones Act claim is fraudulently pleaded. *Id.* The burden of persuasion on the removing party, though, is heavy. *Burchett*, 48 F.3d at 176. To demonstrate that plaintiff's claims serve only to defeat federal jurisdiction, "[t]he removing party must show that there is no possibility that

---

[11] The Jones Act incorporates general provisions of the Federal Employers' Liability Act, which expressly precludes removal. *Fields v. Pool Offshore, Inc.*, 182 F.3d 353, 356 (5th Cir. 1999); Burchett, 48 F.3d at 175; see *also Engel v. Davenport*, 271 U.S. 33, 38, 46 S. Ct. 410, 412, 70 L. Ed. 813(1926).

plaintiff would be able to establish a cause of action." *Id* (quoting *Lackey v. Atlantic Richfield Co.*, 990 F.2d 202,207 (5th Cir. 1993*))*.

"'[D]efendants may pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal.'" *Id.* at 175 (quoting *Lackey*, 990 F.2d at 207 (5th Cir. 1993). However, the inquiry is limited. United States District Courts may use a "summary judgment-like procedure," but are "cautioned against pretrying a case" to determine subject matter jurisdiction. *Id.* at 176 (citing *B. Inc. V. Miller Brewing Co.*, 663 F.2d 545, 545 n.9 (5th Cir. 1981)). Instead, district courts "must resolve all disputed questions of fact and any ambiguities in the current controlling substantive law in favor of the plaintiff." *Id.*[12] Then, only upon a determination that there is "no reasonable basis for predicting that the plaintiff might establish liability," may the court deny remand. *Id.* (quoting *Miller*, 663 F.2d at 551).

### 2. Seaman Status

The Jones Act provides a cause of action for "[a]ny seaman who shall suffer personal injury in the course of his employment," 46 U.S.C. App. §688. Therefore, plaintiff must show he qualifies as a

---

[12] The Court may consider affidavits and deposition transcripts in addition to factual allegations in a verified complaint, but it may not "resolve factual disputes where the disputed factual issues relate to matters of substance." *Lackey,* 990 F.2d at 208 (quoting *Miller*, 663 F.2d at 551 n.14). The Fifth Circuit has warned that "[j]urisdictional inquiry must not subsume substantive determination." *Id.* Disputed questions of fact that arise in the pleadings and affidavits must be resolved in favor of the plaintiff. *Id.*

"seaman." The United States Supreme Court initially defined the Jones Act's use of the term seaman to require that "an employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission.'" *McDermott Int'l, Inc. V. Wilander*, 498 U.S. 337, 355, 111 S. Ct. 807, 817, 112 L. Ed. 2d 866 (1991)(quoting *Offshore Co. V. Robison*, 266 F.2d 769, 779 (5th Cir. 1959)).[13] The Court subsequently required that "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and nature." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368, 115 S. Ct. 2172, 2190, 132 L. Ed. 2d 314 (1995). By adding a requirement of substantial connection, the Court intended to distinguish between "sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." *Id.* at 368, 115 S. Ct. at 2190. The Chandris Court further explained that:

> 'the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of the vessels and the perils attendant thereon.' The duration of the worker's connection to a vessel and the nature of the worker's activities taken together determine whether a maritime employee is a seaman because the ultimate inquiry is

---

[13] The Court clarified that an employee need not "aid in navigation or contribute to the transportation of the vessel" to qualify as a seaman. *Wilander*, 498 U.S. at 355, 111 S. Ct. at 817.

> whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on a vessel at a given time.

*Chandris*, 515 U.S. at 370, 115 S. Ct. at 2190-91 (quoting *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 432 (5th Cir. 1984).

The Fifth Circuit has stated as a general rule of thumb that in order to qualify as a Jones Act seaman, an employee should demonstrate that at least 30 percent of his work is spent in service of a vessel in navigation. *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 375 (5th Cir. 2001). The Supreme Court approved of this benchmark, but clarified it is "no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases. As we have said, "[t]he inquiry into seaman status is fact specific; it will depend on the nature of the vessel and the employee's precise relation to it." *Chandris,* 515 U.S. at 371, 115 S. Ct. at 2191 (quoting *Wilander*, 498 U.S. at 356, 111 S. Ct. at 818).

Qualifying as a seaman under the Jones Act hinges on an employee's status in relation to a vessel rather than on the nature or location of the injury. *Id.* at 359-63, 115 S. Ct. at 2185-88. Therefore, "maritime workers who obtain seaman status do not lose that protection automatically when on shore and may recover under the Jones Act whenever they are injured in the service of a vessel, regardless of whether the injury occurs on or off the ship." *Id.* at

360, 115 S. Ct. at 2186.

Because the LHWCA provides compensation for injured land-based maritime workers while specifically excluding "master[s] or member[s] of a crew," 33 U.S.C. 902(3)(G), the Supreme Court has held that the LHWCA and Jones Act are mutually exclusive. *Chandris*, 515 U.S. at 355-56, 115 S. Ct. at 2183-84. Those excluded by the LHWCA are covered by the Jones Act. *Id.* However, that an employee, such as a ship repairman, performs a job specifically enumerated in the LHWCA, 33 U.S.C. §902(3),[14] does not foreclose the possibility that the individual qualifies as a Jones Act seaman. *See Chandris*, 515 U.S. at 363, 115 S. Ct. at 2187. ("To say that our cases have recognized a distinction between land-based and sea-based maritime workers...is not to say that a maritime employee must work *only* on board a vessel to qualify as a seaman under the Jones Act"). The Supreme Court has held that:

> While in some cases a ship repairman may lack the requisite connection to a vessel in navigation to qualify for seaman status, not all ship repairmen lack the requisite connection as a matter of law. This is so because '[i]t is not the employee's particular job that is determinative, but the employee's connection to a vessel.'

*Southwest Marine, Inc. V. Gizoni*, 502 U.S. 81, 89, 112 S. Ct. 486,

---

[14]The LHWCA defines an "employee" as "any person engaged in maritime employment, including...any harbor-worker including a ship repairman..." 33 U.S.C. 902(3). But the Act expressly excludes "a master or member of a crew of any vessel" from the definition. 33 U.S.C. 902(3)(G). Given this exclusion,an employee's job title is not dispositive of Jones Act coverage. *See Gizoni*, 502 U.S. at 89, 112 S. Ct. at 492 ("By its terms, the LHWCA preserves the Jones Act remedy for vessel crewmen, even if they are employed by a shipyard.").

492, 116 L. Ed. 2d 405 (1991) (quoting *Wilander*, 498 U.S. at 354, 111 S. Ct. at 817); *In re Endeavor Marine, Inc.*, 234 F.3d 287, 291 (citing *Chandris*, 515 U.S at 363-64, 115 S. Ct. at 2172)("[E]ven a ship repairman (which is a traditional longshoreman work and is one of the enumerated occupations under the LHWCA) may qualify for seaman status if he has the requisite employment-related connection to the vessel.")

## II. Discussion

Plaintiff argues that as part of his job as a machinist at Ashton Marine's ship repair facility, he navigated a boat known as the MISS SHIRLEY on the Harvey Canal and that he, therefore, qualifies as a seaman under the Jones Act. Plaintiff asserts by affidavit that during his four years of employment with Ashton Marine, he worked aboard the 38-foot long boat "almost every day" and that 50 percent of his job involved working aboard the MISS Shirley.[15] He navigated the boat around Ashton Marine's shipyard to move vessels under repair in and out of dry dock and to move barges with materials around the shipyard.[16]

Defendants, however, contend that plaintiff's connection to the MISS SHIRLEY was neither substantial in time or nature. Instead, they claim that "the overall nature of plaintiff's

---

[15] Rec. Doc. No. 4-3, p. 2. Because the boat is only 38 feet long, plaintiff asserts that a captain's license is not required to operate it. *Id.* at para. 5.

[16] *Id.* at paras. 4,7.

9

employment was that of a shore based ship-repairer."[17]

The Ingram defendants dispute plaintiff's estimate of 50 percent, arguing that plaintiff's own deposition testimony reveals that his time on the MISS SHIRLEY falls below the Fifth Circuit's 30 percent benchmark and that the Court should disregard his affidavit.[18] They point to plaintiff's deposition wherein he stated that he typically works from 7 a.m. to 4:30 p.m., seven days a week, and that he would sometimes pull out the dry docks and move vessels, which would take about two hours, two or three times a day.[19] He also testified that he would not have to pull out the dry docks everyday, but rather four to five times a week.[20] Based on such testimony, defendants argue that plaintiff could not have spent more than 30 percent of his time operating the MISS SHIRLEY. Defendants further contend that his time drops below 30 percent because Chauvin was not the only one operating the MISS SHIRLEY.[21]

Even disregarding plaintiff's affidavit, the Court is not

---

[17] Rec. Doc. No. 8, p. 3.

[18] Rec. Doc. No. 8, pp. 6-7. Ashton Marine did not also address this issue of duration, but instead relied on the Ingram defendants argument. Rec. Doc. No. 11, p. 5.

[19] Rec. Doc. No. 8-2, p. 8.

[20] Rec. Doc. No. 8-2, p. 10.

[21] Plaintiff twice testified in the deposition that he was the only one to operate the boat. Rec. Doc. 8-2, p. 8; Rec. Doc. 8-3, pp. 2. However, in response to whether Tony Lachere ever operated the boat, plaintiff testified, "He was the crane operator. He ran it a few times." After being asked whether his supervisor operated it 25 percent of the time, he responded, "Maybe about 15 percent of the time." Rec. Doc. No. 8-3, p. 2.

convinced that plaintiff did not spend sufficient time aboard the MISS SHIRLEY to qualify as a seaman. Based on the numbers in plaintiff's deposition, his hours operating the MISS SHIRLEY range from 16 to 30 hours out of a total of 66.5 hours a week. Plaintiff's time only drops below the Fifth Circuit benchmark to 24 percent when the lowest numbers are used, i.e. two times a day for two hours at a time, four days a week. Furthermore, even though others may operate the MISS SHIRLEY, plaintiff's testimony responds to questions about how often he performs these tasks, not others.[22]

Using statements made by plaintiff's supervisor in an unsworn declaration, defendants estimate plaintiff's time spent working on the MISS SHIRLEY at 3 percent.[23] His supervisor declares in his statement that Chauvin operated the MISS SHIRLEY "no more than two (2)hours per week."[24] Notwithstanding, plaintiff testified otherwise in his deposition and the Court must resolve this factual dispute in plaintiff's favor.

Both the Ingram defendants and Ashton Marine argue that regardless of how much time plaintiff spent aboard the MISS

---

[22] Rec. Doc. No. 8-2, p. 8. ("Q. When you would pull the dry dock out, how long do you think it would take you to do that?"); Rec. Doc. No. 8-2, p. 9. ("Q. How many times a week would you have to pull the dry dock out?"); Rec. Doc. No. 8-2, p. 10. ("Q. But on an average week do you think you would pull it out every other day? Three times a week? A. Sometimes four, five times a week.").

[23] Rec. Doc. No. 8, p. 7. While an improper pleading inquiry is limited to summary-judgment-type evidence, the Court may consider this unsworn declaration because it complies with 28 U.S.C. § 1746 (2006). *See Nissho-Iwai Am. Corp. V. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988).

[24] Rec. Doc. No. 11-2, p. 3, paras. 17, 20.

11

SHIRLEY, he lacks a connection that is substantial in nature. Defendants cite multiple cases–*Saienni v. Capital Marine Supply*, No. 03-2509, 2005 WL 940558 (E.D. La. April 18, 2005); *Schultz v. La. Dock Co.*, 94 F. Supp. 2d 746 (E.D. La. May 5, 2000); *Bouvier v. Krenz*, 702 F.2d 89 (5th Cir. 1983); *Richard v. Mike Hooks, Inc.*, 799 So. 2d 462 (La. 2001)–to demonstrate that when considering the totality of circumstances, Chauvin's work is land-based.[25]

While the plaintiffs in the above cited cases were repairmen who neither slept nor ate aboard the vessels like Chauvin, none actually navigated a boat like Chauvin has.[26] *See Saienni*, 2005 WL 940558, at *11; *Schultz*, 94 F. Supp. 2d at 750; *Bouvier*, 702 F. 2d at 90-91; *Richard*, 799 So. 2d at 464, 467 ("The vessels that Richard worked aboard were dockside, he was never more than a gangplank's distance from shore while working... Richard's only time spent on a moving vessel was once every month or so when he was required to ride in a small boat..."). Furthermore, unlike the plaintiff in *Schultz,* Chauvin has a regular connection to an

---

[25] Defendants argue plaintiff's connection to the vessel was not substantial in nature because he often only traveled 100 feet down the Harvey Canal, occasionally a 1/4 mile to another shipyard, and once about 15 miles to another canal. They also contend that he never slept or ate aboard the MISS SHIRLEY, and he never received a United States Coast Guard license. Rec. Doc. No. 8, p. 9-10; Rec. Doc. No. 8-2, p.6.

[26] In *Saienni*, the plaintiff, a shore-side mechanic who worked on moored vessels and repaired vessels underway at sea only four times a year, did not act as a deckhand, pilot, or captain. *Saienni*, 2005 WL 940558, at *11. The plaintiff in *Schultz* was transported by tugboat to reach the barges, but he did not even serve as a deckhand aboard these tugboats. *Schultz*, 94 F. Supp. at 750.

identifiable vessel–the MISS SHIRLEY. *See Schultz*, 94 F. Supp. 2d at 750. Finding these cases distinguishable, the Court is not convinced that plaintiff cannot qualify as a seaman.

The Court is also not persuaded by defendants' argument that Chauvin falls within the LHWCA based on his job as a repairman, his receipt of LHWCA benefits paid voluntarily by Ashton Marine, and plaintiff's claim for additional compensation under the LHWCA. As discussed above, and as acknowledged by defendants, employees such as ship repairmen are not precluded from coverage under the Jones Act merely because their job is listed in the LHWCA. *See Gizoni*, 502 U.S. at 88-89, 112 S. Ct. at 492. Furthermore, the Court cannot consider documents that Ashton Marine submits to demonstrate plaintiff's receipt of LHWCA benefits and supplemental claim for additional compensation because the documents are neither authenticated nor attached to sworn affidavits. *See Miller,* 663 F.2d at 549; *Salvaggio v. Safeco Prop. & Cas. Ins. Co.*, 458 F. Supp. 2d 283, 288 n.3 (E.D. La. 2006)(Feldman, J.)(citing *Templet v. HydroChem Inc.*, 367 F.3d 473, 481 n.5 (5th Cir. 2004)). Regardless, the Supreme Court has held that "an employee who receives voluntary payments under LHWCA without a formal award is not barred from subsequently seeking relief under the Jones Act." *Gizoni*, 502 U.S. at 91, 112 S. Ct. at 493.

Considering the total circumstances of plaintiff's employment, i.e., that he not only repaired vessels but also navigated a boat

to move vessels in and out of dry docks, the Court finds defendants have failed to demonstrate that plaintiff has no possibility of establishing a cause of action under the Jones Act. Defendants have not overcome their heavy burden to show plaintiff improperly pleaded a Jones Act claim, and defendants have not convinced this Court that plaintiff improperly joined his non-diverse employer, Ashton Marine.[27] As such, plaintiff's Jones Act claim may not be removed. Because defendants have not demonstrated complete diversity between plaintiff and defendants, the Court lacks subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1332.

Accordingly,

**IT IS ORDERED** that Chauvin's motion to remand is **GRANTED** as the Court lacks jurisdiction to hear the matter, and that the case is **REMANDED** to the 25th Judicial District Court for the Parish of Plaquemines.

New Orleans, Louisiana, October 1st, 2008.

**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[27] In the notice of removal, defendants allege plaintiff's exclusive remedy is under the LHWCA and plaintiff cannot maintain an action against Ashton Marine under the LHWCA. Rec. Doc. No. 1, p. 3, paras. 11, 12. The removal notice alleges that both plaintiff and Ashton Marine are Louisiana citizens. Rec. Doc. No. 1, p. 2-3, paras. 7, 10.